**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

RICHARD GILLIAM                                                                PLAINTIFF
ADC #209415

v.                                      4:19-cv-00740-BSM-JJV

STEFFEN, OIC, Lonoke County Detention                           DEFENDANTS
Center, *et al.*

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States Judge Brian S. Miller.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.    The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

## I.    INTRODUCTION

In his November 7, 2019 Amended Complaint, Richard Gilliam ("Plaintiff") sued Lonoke County Detention Center employees Steffen and Matthew Hodge in their personal and official capacities.  (Doc. No. 4.)  According to Plaintiff, he was "housed in a so call administrative segregation lockdown unit."  (*Id*. at 4.)  He was let out of his cell "while another inmate who is known to be violent" was also out of his cell and attacked Plaintiff.  (*Id*.)  Plaintiff alleged he received a large laceration to his right side from a homemade shank and was pepper sprayed by Defendant Steffen.  (*Id*.)  He alleged that after Defendant Steffen pepper sprayed him, Defendant Hodge, among others, came into the Unit.  (*Id*. at 5.)  Plaintiff did not allege any action or omission by Defendant Hodge while he was in "the Unit."  (*Id*.)   Plaintiff asserted "[t]his incident was brought to the attention of Jail Admin Matthew Hodge, who said he would investigate," but no investigation took place.  (Doc. No. 4 at 4.)  Plaintiff also said he was denied medical treatment and not allowed to decontaminate, though he did not specify who ignored his medical needs or who denied him the opportunity to decontaminate.  (*Id*. at 5.)

Plaintiff maintained that on October 25, 2019, Defendant Steffen again allowed other inmates out of their cells while Plaintiff "was waiting on OIC Berryman and Deputy Wells to come lock [him] down." (*Id*.) Plaintiff alleged he was not secured in his cell yet again on October 26, 2019, and October 28, 2019, before other inmates were allowed out. (*Id*. at 5-6.) Plaintiff seeks injunctive relief. (*Id*. at 7.)

Plaintiff's claims against Defendant Hodge were dismissed on screening,[1] as were Plaintiff's deliberate indifference to serious medical needs claims. (Doc. Nos. 5, 16.) Plaintiff's failure to protect and excessive force claims against Defendant Steffen in his personal and official capacities remain pending.

Defendant Steffen now has filed a Motion for Summary Judgment. (Doc. Nos. 23-26.) Plaintiff has not responded;[2] this matter is now ripe for a decision. After careful review, and for the following reasons, I find Defendant Steffen's Motion for Summary Judgment should be GRANTED and this case DISMISSED.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or

---

[1] The Prison Litigation Reform Act ("PLRA") requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a).

[2] Because Plaintiff did not respond to Defendant Steffen's statement of undisputed material fact, all material facts set out Defendant Steffen's statement are deemed admitted. *See* LOCAL RULE 56.1; FED. R. CIV. P. 56(e).

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"  Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.*  (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.    ANALYSIS

For the reasons set out below, summary judgment should be entered in Defendant Steffen's favor and Plaintiff's claims should be dismissed.

### A.    Qualified Immunity

Defendant Steffen seeks qualified immunity.  (Doc. No. 24.)  Plaintiff, however, asks only for injunctive relief.  (Doc. No. 4 at 7.)  "Qualified immunity does not apply to a claim for injunctive relief, but it shields government officials from suits for damages under § 1983 if their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Hamner v. Burls*, 937 F.3d 1171, 1175 (8th Cir. 2019).  Because Plaintiff does not ask for damages, qualified immunity is not available to Defendant Steffen.

B.      **Failure to Protect**

The United States Court of Appeals for the Eighth Circuit has "repeatedly applied the deliberate indifference standard . . . to pretrial detainee claims that prison officials unconstitutionally . . . failed to protect the detainee from a serious risk of harm." *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). A pretrial detainee's failure to protect claim, then, is composed of two elements. First, the claimant must demonstrate that his conditions of incarceration posed a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the claimant must demonstrate that the defendant prison official knew of and disregarded the risk to the inmate's safety. *Id*. at 837. The second prong requires a finding that the defendant was deliberately indifferent. *See Whitson v. Stone County Jail*, 602 F.3d 920, 923 (8th Cir. 2010) (in analyzing failure to protect claims "the subjective inquiry regarding an official's state of mind is one of deliberate indifference to inmate health or safety.") Deliberate indifference is akin to criminal recklessness. *See Olson v. Bloomberg*, 339 F.3d 730, 736 (8th Cir. 2003).

Plaintiff's claims arise out of an August 23, 2019 physical altercation with an Inmate Smith. (Doc. No. 4.) In support of his Motion for Summary Judgment, Defendant Steffen submitted numerous grievances filed by Plaintiff. None of the grievances reflect Plaintiff believed he was at a substantial risk of harm from Inmate Smith, or that Defendant Steffen disregarded that risk. Rather, the grievances reflect that in the period leading up to the August 23 fight, Plaintiff at times stood up for Detention Center officers when Inmate Smith was involved. For example, Plaintiff mentions Inmate Smith in an August 11, 2019 grievance:

> I was let out on my hour and at the same time OIC Davore was conducting pill call. Inmate Smith in F4 started an argument with [Officer] Davore in which I had to hang up the phone and check Smith once again for starting a fight with jail staff. Yet I am the one who is a threat to the facility.

(Doc. No. 25-3 at 113.)

5

Sergeant Hall responded:

I don't doubt that you have helped with some occasions. . . . due to classification and past transgressions and damages to the facility by you, measures have been put in place and will stay in place to ensure the safety and security of the facility and you.

(*Id*.)

Later, "[o]n 8/20/19 at 9:25 am, [Plaintiff] stopped inmate Smith from brutally whooping OIC Stephan and Deputy Lanius . . . . Sgt. Hall thanked [Plaintiff] for it . . . ." (*Id*. at 118.)  In another grievance, Plaintiff asserts that "[he has] spared other guards from Smith getting violent." (*Id*. at 123.)

Then, on August 23, 2020, Plaintiff and Inmate Smith were involved in a physical altercation.  In support of his Motion for Summary Judgment, Defendant Steffen submitted a video recording that captured the incident.  (Doc. No. 26.)  The scuffle began after Inmate Smith trotted down a staircase to the lower level of an open area referred to as a pod.  (*Id*.)  The video reflects Inmate Smith, dressed only in shorts and shower shoes, walking down the stairs with his open hands in front of him; no weapon is visible.  As Inmate Smith made his way across the room while walking alongside the wall, he approached Plaintiff's vicinity; Plaintiff was standing at the end of the room that was in Inmate Smith's path.  As Plaintiff was placing items in the trash can, his back was towards Inmate Smith.  Plaintiff then became aware of Inmate Smith and turned his view and his body in Inmate Smith's direction.  Inmate Smith continued walking straight ahead, looking straight ahead.  When Inmate Smith was parallel with Plaintiff, Plaintiff lunged in Inmate Smith's direction.

The scuffle then falls out of the camera's range, but nonetheless the video relates that Plaintiff engaged Inmate Smith as Inmate Smith walked near him.  (*Id*.)  As Plaintiff and Inmate Smith came back into view, punches flew and Inmate Smith attempted to withdraw.  (*Id*.)  Several

times during the recorded brawl Inmate Smith tried to distance himself from Plaintiff, but Plaintiff's aggressions toward Inmate Smith continued, manifested in further physical blows. (*Id.*) It appears Plaintiff initiated the altercation. (*Id.*)

On August 27, 2020, four days after the incident, Plaintiff grieved:

Why was ever a situation with locks on my door and the locks on F4[3] were unlocked at the same time? The locks on my door are there for the "Safety and Security" of the facility. This is supposed to be an Administrative Segregation pod. And why hasn't OIC Steffen been trained on and signed off on Jail Standards. If he would have been trained properly this situation on the 23rd at 12:20 pm would never have happened.

(Doc. No. 25-3 at 147.)

In an Incident Report, Defendant Steffen described the events as follows:

At 12:00 I was in Fpod letting inmate Richard Gilliam clean his cell at the same time I let inmate Robert Smith use his hour. When inmate Richard Gilliam went to go throw away his trash inmate Robert Smith came running down the stairs witch led to them fighting seconds later. When I heard all the commotion I turnt around and saw the two inmates fighting. At that point, I pulled out my pepper spray and told them to break it up but they still continued to fight. I said OC OC OC and after witch I spraid them. After I hit both of them with the spray I pulled out the taser and told them to stop. After that I called for backup and after that the two inmates stopped fighting.

(Doc. No. 25-4 at 2.)

Again, it appears in the video that Plaintiff initiated the fight with Inmate Smith. And while Plaintiff may have known Inmate Smith had a potential for or propensity for violence against Detention Center officers, nothing in the record reflects Plaintiff worried about Inmate Smith being a substantial risk to Plaintiff's own safety. For example, on August 12, 2019, Plaintiff had been on the floor "taking his hour" with multiple inmates. (Doc. No. 25-3 at 115.) He filed a grievance that day regarding medical care and personal hygiene. In the grievance Plaintiff wrote:

---

[3] Inmate Smith was housed in cell F4.

> I was also on the floor taking my hour with multiple inmates. And I even stopped one of them from whooping Deputy Devour yet again. There was no issues with ANY other inmates while I was out. The other inmates were glad to see me out!

(*Id*.) (emphasis in original.)

Plaintiff's August 12, 2019 grievance references the event in his August 11, 2019 grievance, mentioned above, when Plaintiff says he "check[ed] Smith once again for starting a fight with jail staff." (*Id*. at 113, 115.) So, on August 11, 2019, Plaintiff and Inmate Smith were out of their cells at the same time, but Plaintiff did not grieve a fear for his safety. Despite Plaintiff "checking" Inmate Smith's actions toward a Detention Center officer, there was no problem between them: Plaintiff affirmed in his August 12 grievance that there were no issues with any other inmate while Plaintiff and others were out of their cells simultaneously.

In short, there is no evidence that Plaintiff was at a substantial risk of serious harm from Inmate Smith before the August 23, 2019 altercation. There is also no evidence of any obvious risk to Plaintiff of which Defendant Steffen should have been aware. *See Farmer*, 511 U.S. at 844-845. And there is no evidence establishing Defendant Steffen's deliberate indifference to any risk.

Plaintiff alleges Inmate Smith initiated the fight. For the purposes of determining whether summary judgment is appropriate, I must accept as true facts that are adequately supported, "to the 'extent they are not "blatantly" contradicted by the record.'" *Burnikel v. Fong*, 886 F.3d 706, 709 (8th Cir. 2018) (internal citation omitted). Plaintiff's allegation that Inmate Smith was the aggressor is blatantly contradicted by the video footage. But even if Inmate Smith did throw the first punch, the Court of Appeals for the Eighth Circuit repeatedly has held that a surprise attack by a fellow inmate fails to satisfy the failure to protect analysis. *See, for example, Patterson v.*

*Kelley*, 902 F.3d 845, 851-52 (8th Cir. 2018).  There is simply nothing in the record showing that Defendant Steffen was aware of any possible danger to Plaintiff from Inmate Smith.

Further, to the extent Plaintiff may contend Defendant Steffen's failure to protect included a failure to intervene once the skirmish began, Plaintiff has not established that Defendant Steffen had a duty to intervene.  Plaintiff asserts that during the scuffle he received a large laceration from the shank Inmate Smith allegedly wielded.  A prison guard has no "constitutional duty to intervene in an armed assault of one inmate upon other when the intervention would place the guard in danger of physical harm." *McCrary v. Baldwin*, 500 Fed. Appx. 551 (8th Cir. 2013) (per curiam) (*citing Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995); *Arnold v. Jones*, 891 F.2d 1370, 1373-74 (8th Cir. 1989)). Further, based on the video, it appears no other personnel were nearby at the time of the incident and the area in which the altercation occurred was an open area where, presumably, other inmates could walk about.  (Doc. No. 26.)  Intervening in such circumstances would place a guard in danger of physical harm.

In his Amended Complaint, Plaintiff alleges that after the August 23 fight, he repeatedly was not secured in his cell before other inmates were allowed out of their cells.  (Doc. No. 4 at 5-6.)  I interpreted these allegations to state a practice or policy of failure to protect.  (Doc. No. 5 at 2.)  There is nothing further in the record, though, that indicates Plaintiff was out of his cell at the same time as other inmates after the August 23, 2019 fight.  As such, there is no evidence of Plaintiff's alleged practice or policy.

At this stage, Plaintiff was required to meet proof with proof.  To survive summary judgment, Plaintiff's allegations must have been supported by evidence creating a genuine issue of material fact.  *Wilson v. Smith*, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); *Bolderson v. City of Wentzville, Missouri*, 840

F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor).  Plaintiff, however, has failed to meet his burden and provide the required proof.

### C.    Excessive Force

Defendant Steffen seeks summary judgment in his favor.  (Doc. No. 23.)  While Defendant Steffen did not address excessive force separately in the brief in support of his motion (Doc. No. 24), the evidence presented establishes that Defendant Steffen's use of pepper spray was objectively reasonable and that Plaintiff was allowed to decontaminate.

Courts analyze a pretrial detainee's excessive force claim under the objective reasonableness standard.  *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015); *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017).  A court must assess an officer's actions "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Ryan*, 850 F.3d at 427 (internal citation omitted).  An officer may be justified in using force if an individual actively resists his commands.  *See Id*. at 428.  As the Supreme Court of the United States has explained, the following factors-among others-may be considered in determining the reasonableness of the use of force:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397.

As set out above, Defendant Steffen describes the August 23 incident as follows:

> At 12:00 I was in Fpod letting inmate Richard Gilliam clean his cell at the same time I let inmate Robert Smith use his hour.  When inmate Richard Gilliam went to go throw away his trash inmate Robert Smith came running down the stairs witch led to them fighting seconds later.  When I heard all the commotion I turnt around and saw the two inmates fighting.  At that point, I pulled out my pepper spray and told them to break it up but they still continued to fight.  I said OC OC OC and after

10

> witch I spraid them.  After I hit both of them with the spray I pulled out the taser
> and told them to stop.  After that I called for backup and after that the two inmates
> stopped fighting.

(Doc. No. 25-4 at 2.)

The video recording supports Defendant Steffen's version of the events.  (Doc. No. 26.)
Defendant Steffen was alone in the room with Plaintiff and Inmate Smith as their fight broke out.
(*Id*.)  Defendant Steffen  is seen approaching the inmates from across the room as they fight.  (*Id*.)
He then stands in front of them, as they continue to fight, holding something small in his right
hand, presumably the pepper spray.  (*Id*.)   He was near the inmates for approximately three
seconds holding the object.  (*Id*.)   Then, as the brawl continues, Defendant Steffen steps out of
camera's sight.  (*Id*.)  The inmates continue the altercation.  (Doc. No. 26.) At one point, Plaintiff
can be seen wiping his face with his hand and shirt.  (*Id*.)   After doing so, Plaintiff continues to
engage Inmate Smith, who had jumped on top of a table.  (*Id*.)  Defendant Steffen then reappears,
holding what looks to be a taser.  (*Id*.)  He keeps his distance as the inmates' fight  continues; the
video does not reflect that he deployed the taser.  (*Id*.)  The inmates then separate.  (*Id*.)  Plaintiff
moves out of sight of the camera for a moment, then reappears, picks up what looks to be a towel
from behind a mop bucket, enters a room, closes the door, and remains there.  (Doc. No. 26.)  A
brief time later, other officers arrive.  (*Id*.)   Plaintiff then exits the closed door, turns right, and
enters another door—the shower room.  (*Id*.)   He remains in that room for some minutes.  (*Id*.)
As the video proceeds, it shows that Plaintiff was taken new clothes, the clothing he wore during
the fight was removed, and ultimately Plaintiff was locked into his cell.  (*Id*.)

Plaintiff continued fighting with Inmate Smith after Defendant Steffen approached them at
the beginning of their altercation: Plaintiff was actively resisting.  Defendant Steffen was alone
with two battling inmates.  He used pepper spray, but tempered the amount of force—he did not

soak the inmates with the spray and he did not deploy his taser. Plaintiff's injury from the pepper spray was superficial. Further, Defendant Steffen was on notice that Plaintiff may be violent. For example, "[i]n front of . . . Stephen, [Hodge] told Light 'If [Plaintiff] knew what your charges are, then he would murder you.'" (Doc. No. 25-3 at 121.) Considering all of the above, it was reasonable for Defendant Steffen to use pepper spray on Plaintiff and Inmate Smith.

Because Plaintiff did not allege a policy or practice regarding excessive use of force, there is no basis on which to find municipal liability and any related official capacity claim fails.

### D.    Deliberate Indifference to Serious Medical Needs

Defendant Steffen seeks summary judgment on Plaintiff's deliberate indifference to serious medical needs claim. (Doc. No. 24 at 9-19.) On January 28, 2020, Plaintiff's deliberate indifference to serious medical needs claims were dismissed because in his Amended Complaint Plaintiff failed to specify who allegedly denied him medical care. (Doc. Nos. 5, 16.) Accordingly, I will not address those claims now.

For the reasons set out above, summary judgment should be entered in Defendant Steffen's favor.

## IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.    Defendant Steffen's Motion for Summary Judgment (Doc. No. 23) be GRANTED.

2.    Plaintiff's claims against Defendant Steffen be DISMISSED with prejudice.

3.    Plaintiff's Amended Complaint (Doc. No. 4) be DISMISSED.

4.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations and accompanying Judgment would not be taken in good faith.

DATED this 12th day of August 2020.

_____
JOE J. VOLPE
UNITED STATES MAGISTRSTE JUDGE